**UNITED STATES of America,**
**Appellee,**

v.

**Nelly CASTELLANOS, Defendant–**
**Appellant.**

**Docket No. 03–1036.**

United States Court of Appeals,
Second Circuit.

Argued: Oct. 15, 2003.

Decided: Dec. 1, 2003.

Louis M. Freeman, Freeman Nooter & Ginsberg, New York, N.Y., for Defendant–Appellant.

Katherine Polk Failla, Asst. U.S. Atty., New York, N.Y. (James B. Comey, U.S. Atty., Jonathan S. Kolodner, Adam B. Siegel, Asst. U.S. Attys., New York, N.Y., on the brief), for Appellee.

Before: OAKES, NEWMAN, and POOLER, Circuit Judges.

JON O. NEWMAN, Circuit J.

This sentencing appeal concerns the availability of an "aberrant behavior" departure under the Sentencing Guidelines, and, in particular, the pertinence of whether the defendant's conduct was spontaneous. Nelly Castellanos appeals from a judgment of conviction entered in the District Court for the Southern District of New York (Michael B. Mukasey, Chief District Judge), sentencing her to seventy-eight months' imprisonment. Relying on language in *United States v. Gonzalez*, 281 F.3d 38, 47–48 (2d Cir.2002), Castellanos contends that Chief Judge Mukasey improperly considered the fact that her offense conduct was not spontaneous in denying an aberrant behavior departure pursuant to section 5K2.20 of the U.S. Sentencing Guidelines Manual (2002) ("U.S.S.G."). We conclude that the broad language in *Gonzalez* is not to be understood as rendering the absence of spontaneity irrelevant as to all claims for aberrant behavior departures, and that such absence was properly considered in this case. We therefore affirm the District Court's judgment.

## Background

After a four-day trial, a jury found Castellanos guilty of conspiring to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 846 (2000). Subsequently, Castellanos made a "safety valve" proffer pursuant to 18 U.S.C. § 3553(f)(5) (2000), which entitled her to a two-level reduction in her adjusted offense level. *See* U.S.S.G. §§ 2D1.1(b)(6), 5C1.2. During the proffer session, Castellanos admitted to lying at trial in order to hide that she had known about the drug transaction one week prior to its occurrence, and that she had brought thousands of dollars with her to pay for the drugs. Castellanos also acknowledged

that several witnesses had given perjured testimony at trial to buttress her story.

Based on these admissions, Chief Judge Mukasey rejected Castellanos's request for a two-level downward departure for aberrant behavior under section 5K2.20. Chief Judge Mukasey explained:

> This was not a spontaneous offense. [Castellanos] was, as I understand it, aware of what was happening at least a week in advance. Not only that, but, again, after the offense was committed, and after she was caught and indicted, she went to trial and got up on the witness stand and perjured herself.

Tr. Sentencing Hr'g Jan. 9, 2003, at 4–5.

## Discussion

Section 5K2.20 of the Sentencing Guidelines gives a district judge the discretion to depart in an "extraordinary" case where the defendant's criminal conduct constituted "aberrant behavior." A court may exercise this discretion to depart for aberrant behavior only where the offense is "a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." U.S.S.G. § 5K2.20, cmt. n. 1. The aberrant behavior departure is inapplicable for certain types of offenses, none of which is involved in this case. *See id.* § 5K2.20.

The Sentencing Commission adopted this formulation of section 5K2.20 by amendment in November 2000, responding to a circuit split regarding the appropriate legal standard for determining whether a defendant's offense constituted aberrant behavior. A majority of circuits had limited the aberrant behavior departure to single acts of spontaneity and thoughtlessness. *See* U.S.S.G. app. C, amend. 603 (Supp. 2002) ("Amend. 603")

(citing cases from Third, Fourth, Fifth, Seventh, Eighth, Eleventh, and D.C. Circuits). A minority of circuits took a broader approach. *Id.* (citing cases from First, Second, Ninth, and Tenth Circuits). The Second Circuit was among the minority, having adopted a "totality of the circumstances" test. *See Zecevic v. United States Parole Commission,* 163 F.3d 731, 735–36 (2d Cir.1998).

In the amendment to section 5K2.20, the Sentencing Commission clarified that it "adopt[ed] *in toto* [n]either the majority [n]or minority circuit view on this issue." Amend. 603. Instead, the Guidelines charted a middle course. On the one hand, the Commission extended the departure to a single criminal "transaction" or "occurrence," wording that the Commission regarded as "somewhat broader than 'single act'." *Id.* On the other hand, the Commission rejected the "'totality of the circumstances' approach," which the Commission deemed "overly broad and vague." *Id.*

Castellanos argues that the Commission's rejection of a single spontaneous act as a requirement of an aberrant behavior departure should be understood to prohibit district courts from taking spontaneity into account at all, either to require its presence or note its absence. She supports her claim with language we used in *Gonzalez* in the course of remanding for reconsideration an aberrant behavior departure. In that case, we directed the District Court to determine whether the departure was warranted *"without considering whether or not the behavior was spontaneous."* 281 F.3d at 47–48 (emphasis added).

The reason for precluding consideration of spontaneity in the *Gonzalez* remand was rooted in the special circumstances of that case. The District Court had denied a section 5K2.20 departure on the mistaken view that "the point of [section 5K2.20] in

respect of duration is to try to identify . . . some subset of criminal activity which is, in some significant degree, spontaneous." *Id.* at 41 (internal quotation marks omitted). Finding that the defendant had "ample opportunity to make a rational choice," the District Court concluded that his criminal offense was not spontaneous, and, for that reason alone, not of a limited duration permitting a departure. *Id.* at 47 (internal quotation marks omitted). In remanding, we ruled that the District Court had erred in making spontaneity a requirement for a section 5K2.20 departure. "Spontaneity is not a 'subset' of the limited duration factor or even of the lack of significant planning factor . . . . Spontaneity of behavior and behavior of limited duration simply are not the same." *Id.* As we noted, "The Sentencing Commission [had] specifically rejected a rule that would have 'allowed a departure for aberrant behavior *only* in a case involving a single act that was spontaneous and seemingly thoughtless.'" *Id.* (quoting U.S.S.G. Amend. 603)(emphasis added). Our instruction to the District Court not to "consider" spontaneity must be understood as a correction for the error of making spontaneity a requirement for the departure; it was not a general prohibition against examining whether criminal conduct was spontaneous in order to determine eligibility for an aberrant behavior departure.

■ Under the Guidelines, absence or presence of spontaneity *alone* never determines whether criminal conduct is aberrant behavior. A non-spontaneous criminal act might be aberrant behavior. Even though not committed entirely without planning, it might nevertheless have been committed without "significant" planning, be of limited duration, and constitute a marked deviation from an otherwise law-abiding life. On the other hand, a spontaneous criminal act is not necessarily aber-

rant behavior. Although its spontaneity almost certainly means that the act was committed without significant planning, the act may not be of limited duration or present a departure from an otherwise law-abiding life. Spontaneity is not determinative, but it is a relevant and permissible consideration when treated as one factor in evaluating whether the three-pronged test of section 5K2.20 has been met.

■ Chief Judge Mukasey's sentencing remarks show that in determining whether Castellanos's crime constituted aberrant behavior, he accorded appropriate weight to the factor of spontaneity. He noted that Castellanos had a week's notice of the crime and therefore plenty of time to consider whether to participate. Tr. Sentencing Hr'g Jan. 9, 2003, at 4. However, Chief Judge Mukasey did not rest his finding that Castellanos's crime was not aberrant behavior on lack of spontaneity alone. He also noted that "[s]he was carrying the money" to purchase drugs at the time of arrest. *Id.* at 10. It was within the Judge's discretion to find that these facts, in combination, suggested that Castellanos had done significant planning for the crime. Moreover, the Judge found that Castellanos's crime was not a marked departure from an otherwise law-abiding life at the time of sentencing. She had attempted to evade responsibility for her role in the drug transaction by lying on the stand and suborning the perjury of others. *Id.* at 5, 13–14. The aberrant behavior departure was permissibly rejected.

■ The Appellant's remaining challenges to her sentence require less discussion. First, she contends that the District Court's consideration of her perjury at trial both to deny her an aberrant behavior departure and to enhance her adjusted offense level for obstruction of justice amounts to impermissible double-counting.

However, a district court may base two aspects of a Guidelines calculation on a single act where they serve different purposes. *See United States v. Lauersen,* 348 F.3d 329, 343–44 (2d Cir.2003); *United States v. Then,* 56 F.3d 464, 466 (2d Cir. 1995); *United States v. Campbell,* 967 F.2d 20, 23–25 (2d Cir.1992). The Appellant's perjury at trial justified the obstruction enhancement and also indicated that her offense conduct was not "a marked deviation ... from an otherwise law-abiding life," U.S.S.G. § 5K2.20, cmt. n. 1, as required for the claimed departure. Unlike *United States v. Mandel,* 991 F.2d 55, 58–59 (2d Cir.1993), where the same factor was impermissibly used for an upward adjustment in the offense level and then for an upward departure, the Appellant's trial perjury was used for an upward adjustment and to show her ineligibility for a claimed downward departure.

■ Second, to the extent that the Appellant challenges the use of her trial perjury both to add the obstruction enhancement and to deny an acceptance of responsibility decrease in the adjusted offense level, the claim lacks merit. The Guidelines explicitly permit the same act to be counted both for an obstruction enhancement under section 3C1.1 and for denial of an acceptance of responsibility decrease under section 3E1.1. *See* U.S.S.G. § 3E1.1, cmt. n. 4. "Conduct resulting in an enhancement under § 3C1.1 (Obstructing or Impeding the Administration of Justice) ordinarily indicates that the defendant has not accepted responsibility for his criminal conduct. There may, however, be extraordinary cases in which adjustments under both §§ 3C1.1 and 3E1.1 may apply." *Id.* Castellanos has not alleged any such extraordinary circumstances.

Moreover, Castellanos made her safety-valve proffer only after her jury trial and

conviction. Section 3E1.1 is "not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the essential factual elements of guilt, is convicted, and only then admits guilt and expresses remorse." *Id.* § 3E1.1, cmt. n. 2.

## Conclusion

The judgment of the District Court is affirmed.