No. 21-2494
United States of America v. El Mujaahid

# UNITED STATES COURT OF APPEALS
# FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 10th day of July, two thousand twenty-three.

PRESENT:
> MYRNA PÉREZ
> ALISON J. NATHAN,
> MARIA ARAÚJO KAHN,
> > *Circuit Judges.*

_____

United States of America,

> *Appellee,*

> v.                 No. 21-2494

Jared El Mujaahid,

> *Defendant-Appellant.*

_____

**FOR DEFENDANT-APPELLANT:**      ANDREW H. FREIFELD, Esq., New York, NY.

**FOR APPELLEE:**      CHRISTOPHER D. BRUMWELL (Benjamin A. Gianforti, Hagan Scotten, *on the brief*), Assistant United States Attorneys, *for* Damian Williams, United States Attorney for the Southern District of New York, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Nelson S. Román, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court entered on September 22, 2021 is **AFFIRMED**.

Appellant Jared El Mujaahid pled guilty to a two-count indictment charging him with firearms trafficking, in violation of 18 U.S.C. § 922(a)(1)(A), and possessing a firearm with knowledge that he had previously been convicted of a crime punishable by more than one year's imprisonment, in violation of 18 U.S.C. § 922(g)(1). The conviction was based on three separate controlled purchases involving two confidential informants. Critical to this appeal, during the second purchase, Confidential Informant 1 ("CI-1") told Mujaahid that his associate intended to send the firearm being purchased to the Dominican Republic for resale. In response, Mujaahid expressed interest in meeting the associate and continuing to sell to CI-1. During the third purchase, Mujaahid met with CI-1 and Confidential Informant 2 ("CI-2"), who told Mujaahid that he is always buying firearms and selling them in the Dominican Republic. At sentencing, the district court applied a four-level export enhancement under the United States Sentencing Guidelines ("Guidelines"), U.S.S.G. § 2K2.1(b)(6)(A), and a four-level trafficking enhancement, *id.* § 2K2.1(b)(5). We are asked to decide whether the district court erred in applying these enhancements, and whether, by applying both, it engaged in impermissible double counting. We address Mujaahid's challenges, in turn, and affirm his sentence because the record supports the application of both enhancements, which we conclude target distinct harms. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues on appeal, which we reference only as necessary to explain our decision.

## I.    Standard of Review

We review sentences for unreasonableness, applying a deferential abuse-of-discretion standard. *United States v. Booker*, 543 U.S. 220, 260–61 (2005); *Gall v. United States*, 552 U.S. 38, 41 (2007). "We review a district court's interpretation of the Guidelines *de novo* and its factual findings for clear error." *United States v. Solis*, 18 F.4th 395, 401 (2d Cir. 2021) (citations omitted). When calculating the Guidelines range, an "error itself can, and most often will, be sufficient to show a reasonable probability of a different outcome absent the error." *Molina-Martinez v. United States*, 578 U.S. 189, 198 (2016). "If we 'identify procedural error in a sentence, but the record indicates clearly that the district court would have imposed the same sentence in any event, the error may be deemed harmless, avoiding the need to vacate the sentence and to remand the case for resentencing.'" *United States v. Mandell*, 752 F.3d 544, 553 (2d Cir. 2014) (per curiam) (quoting *United States v. Jass*, 569 F.3d 47, 68 (2d Cir. 2009)). Unpreserved objections are reviewed for plain error. *United States v. Osuba*, 67 F.4th 56, 65 (2d Cir. 2023); *see also* Fed. R. Crim. P. 52(b).

## II.    Discussion

### A.  Export Enhancement

The Guidelines' export enhancement applies to someone who "possessed or transferred any firearm . . . with knowledge, intent, or reason to believe that it would be transported out of the United States." U.S.S.G. § 2K2.1(b)(6)(A). Mujaahid would have us conclude that he lacked even reason to believe the firearms would be exported. We agree that at the time of the second controlled purchase it was still unclear whether Mujaahid transferred the firearm with the requisite knowledge. Specifically, the record does not reveal whether CI-1 was already in possession of the firearm when he informed Mujaahid that he and his associate would send the weapon to the

3

Dominican Republic. However, by the time Mujaahid met with CI-1 and CI-2 several days later for the third controlled purchase, Mujaahid had clear reason to believe that the firearms were being exported. Therefore, the district court did not err in finding, by a preponderance of the evidence, that Mujaahid had "knowledge, intent, or reason to believe" that a firearm would be exported. *Id.*

Mujaahid challenges the district court's ability to fill factual gaps in the Presentence Report with information from the sentencing memoranda, including transcripts of the audio recordings from the second and third controlled purchases. However, in resolving a factual issue, so long as the sentencing court ensures that "the defendant had an opportunity to respond in order that the court not rely on misinformation," the court may "properly take into account any information known to it." *United States v. Concepcion*, 983 F.2d 369, 387–88 (2d Cir. 1992). Mujaahid had ample opportunity to respond at the sentencing hearing, both to the transcripts in the sentencing memorandum and to the government's repeated references to those transcripts at sentencing.

**B. Trafficking Enhancement**

Mujaahid did not preserve the objection he raises on appeal to the district court's application of the trafficking enhancement. He only objected to the trafficking enhancement insofar as he believed the export enhancement should not be applied because the trafficking enhancement had been applied. *See Greer v. United* States, 141 S. Ct. 2090, 2096 (2021) ("If the defendant has 'an opportunity to object' and fails to do so, he forfeits the claim of error." (quoting Fed. R. Crim. P. 51(b)). We therefore review for plain error.

The trafficking enhancement applies to a defendant "engag[ing] in the trafficking of firearms." U.S.S.G. § 2K2.1(b)(5). The enhancement applies if the defendant transferred two or more firearms and "knew or had reason to believe that such conduct would result in the transport, transfer, or disposal of a firearm to an individual . . . whose possession or receipt of the firearm

4

would be unlawful [or] who intended to use or dispose of the firearm unlawfully." *Id.* § 2K2.1 Application Note 13.

Contrary to Mujaahid's arguments, to find that this enhancement applies, we need not rely on the conclusion that he had reason to believe that at least one of the firearms would be exported. His illicit street sales of the three firearms are sufficient to show that he had reason to believe he was transferring a firearm to an individual "who intended to use or dispose of the firearm unlawfully." *Id*. This is particularly true where, as here, Mujaahid sold a stolen firearm and a sawed-off shotgun to the confidential informants. Mujaahid had no reason to believe that such easily-concealed, dangerous weapons were for a gun collection or personal use.[1] *See United States v. Martin*, 78 F.3d 808, 812–13 (2d Cir. 1996); *United States v. Mitchell*, 328 F.3d 77, 83 (2d Cir. 2003); *see also United States v. Allegree*, 175 F.3d 648, 651 (8th Cir. 1999) (stating that sawed-off shotguns "are inherently dangerous and lack usefulness except for violent and criminal purposes"). Therefore, the district court did not plainly err in finding, by a preponderance of the evidence, that Mujaahid had "reason to believe" that his sale of firearms "would result in the transport, transfer, or disposal of a firearm to an individual . . . who intended to use or dispose of the firearm unlawfully." U.S.S.G. § 2K2.1 Application Note 13.

**C. Double Counting Enhancements**

"Impermissible double counting occurs when one part of the guidelines is applied to increase a defendant's sentence to reflect the kind of harm that has already been fully accounted for by another part of the guidelines." *United States v. Napoli*, 179 F.3d 1, 12 n.9 (2d Cir. 1999)

---

[1] Though we find that the trafficking enhancement was properly applied for the reasons discussed above, we explicitly reject the government's insistence that the enhancement applies because Mujaahid attempted to sell firearms in exchange for crack cocaine. To the extent that this factual assertion relies on a quote from the transcript reflecting that Mujaahid said "this crack lane is wack," App'x at 62, it is unfounded. This quote suggests that Mujaahid seemed hopeful to engage in more firearms transactions because the drug business was unappealing, and not that he wished to merge the firearms and drug businesses. *See Wack*, Oxford English Dictionary (stating that "wack" means "bad; harmful; unfashionable; boring").

(internal quotation marks omitted). No impermissible double counting occurred here because "multiple adjustments may properly be imposed when they aim at different harms emanating from the same conduct." *United States v. Volpe*, 224 F.3d 72, 76 (2d Cir. 2000); *see also United States v. Castellanos*, 355 F.3d 56, 60 (2d Cir. 2003). Application of the exporting and trafficking enhancements emanates from the same conduct but the enhancements address two discrete harms. The trafficking enhancement applies when a defendant knew or had reason to believe that the transferred firearm would end up in the hands of an individual whose possession or use of the firearm would be unlawful, regardless of whether the defendant intended to export the firearm outside of the United States. The Sentencing Commission's rationale for creating a separate export enhancement—specifically targeting the export of weapons across borders—underscores that exporting and trafficking are discrete harms targeted separately by the Guidelines. *See* U.S.S.G. Sentencing Commission's Note to 2011 Amendment 753 ("[P]ossessing or transferring a firearm with knowledge, intent, or reason to believe that it would be transported out of the United States is conduct sufficiently similar in seriousness to possessing or transferring a firearm with knowledge, intent, or reason to believe that it would be used or possessed in connection with another felony offense to warrant similar punishment."). In any event, as discussed above, to apply both enhancements we need not rely on the exporting aspect of Mujaahid's conversation with the confidential informants. The trafficking enhancement is supported by other facts in the record, thus removing any semblance of overlap.

Moreover, Mujaahid "has offered nothing in the Sentencing Guidelines or relevant statutes reflecting an intent to preclude the double counting the District Court employed, and has therefore not shown any impermissible double counting." *United States v. Morris*, 350 F.3d 32, 37 (2d Cir. 2003).

For the reasons stated above, we find no error in Mujaahid's sentence. We have considered all of Mujaahid's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court